**BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | MDL DOCKET NO. _____ |
| MEDNAX SERVICES, INC. DATA | ) | |
| SECURITY INCIDENT LITIGATION | ) | |

**BRIEF IN SUPPORT OF MOTION TO TRANSFER AND CONSOLIDATE FOR
COORDINATED PRETRIAL PROCEEDINGS UNDER 28 U.S.C. § 1407**

Mednax Services, Inc.; Mednax, Inc.; Pediatrix Medical Group, Inc.; and Pediatrix Medical Group of Kansas, P.C. (collectively, "Movants") hereby submit this brief in support of their Motion to Transfer and Consolidate for Coordinated Pretrial Proceedings under 28 U.S.C. § 1407. At the time of this filing, five putative class actions have been filed in four judicial districts, all arising out of a criminal third-party cyber attack that impacted certain Microsoft Office 365-hosted Mednax Services, Inc. business email accounts (the "Incident") and seeking to represent overlapping putative classes.  Transfer and consolidation of the duplicative cases is appropriate under Section 1407 for the reasons set forth herein.  As discussed below, Movants respectfully request that the Judicial Panel on Multidistrict Litigation transfer the pending cases to the Southern District of Florida, which is the most appropriate transferee court because it is: (i) the location where more cases are pending than in any other district; (ii) home to Movants and as such a venue where witnesses and relevant documents may be found; (iii) convenient to the parties and witnesses; and (iv) a District with significant MDL experience, well-equipped to preside over complex pretrial proceedings.

**FACTUAL AND PROCEDURAL BACKGROUND**

Mednax Services, Inc. is a physician practice management company that provides, among other services, revenue cycle management services for a number of physician practices, including

Movant Pediatrix Medical Group of Kansas, P.C.[1]  Certain Microsoft Office 365 business email accounts hosted by Mednax Services, Inc. were impacted by a phishing attack in 2020.  Five putative class actions have now been filed against Movants that arise out of this phishing attack.[2]  Ex. A, Schedule of Actions.

These cases are not only based on the same factual occurrence – the Incident – they also assert similar claims on behalf of overlapping putative classes of plaintiffs.  The documents and witnesses relevant to claims arising out of the Incident will primarily be located in Florida because Movants' headquarters are located in Sunrise, Florida and because Movants' management and information technology employees are located there.

The five putative class actions are pending in four federal district courts.  Two actions are pending in the Southern District of Florida, one is pending in the Southern District of California, one is pending in the District of South Carolina, and one is pending in the Western District of Missouri.  All of the actions are in the preliminary stages of litigation.  Indeed, the first action was filed on December 22, 2020, and Movants have not yet responded to any of the operative complaints.

[1] Though Mednax, Inc. is named as a Defendant in one of the pending actions, Mednax, Inc. is not the proper Defendant for the claims that Plaintiffs in that action purport to assert.  The proper Defendant for the claims Plaintiffs in that action purport to assert is Mednax Services, Inc., which is the entity whose systems were impacted by the phishing attack that forms the basis of Plaintiffs' claims.

[2] American Anesthesiology, Inc. ("AA") is named as a Defendant in one of the putative class actions filed regarding the Incident.  AA has no present corporate affiliation with Movants (and did not have such an affiliation at the time of the Incident).

**ARGUMENT**

**I.      Consolidation and Coordination of Pretrial Proceedings Is Proper.**

Pursuant to 28 U.S.C. § 1407, the transfer of actions to a single jurisdiction for coordinated or consolidated pretrial proceedings is proper when the civil actions pending in various districts involve one or more common questions of fact, and transfer and consolidation "will be for the convenience of the parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). These statutory requirements are met in this case.

A.   All of the Cases Involve Common Questions of Fact.

Transfer under Section 1407 "does not require a complete identity or even a majority of common factual or legal issues as a prerequisite to transfer." *In re Rembrandt Techs., LP, Patent Litig.*, 493 F. Supp. 2d 1367, 1370 (J.P.M.L. 2007). Here, this requirement is easily satisfied because all of these cases arise out of and seek to hold one or more Movants responsible for the same Incident. The central allegation in every case is that the Movants failed to safeguard the protected health information of the patients of Mednax's affiliated physician medical practices, leading to unauthorized access of that information.[3]

This Panel frequently finds consolidation warranted where, as here, multiple pending cases arise out of a single data security incident. *See, e.g.*, *In re Sprouts Farmers Mkt., Inc.*, 232 F. Supp. 3d 1348, 1348 (J.P.M.L. 2016) (transferring four actions for consolidated pretrial proceedings where cases "share factual issues concerning an incident in which the 2015 W-2 forms of Sprouts employees were released, unencrypted, to an unknown party as the result of a phishing scam"); *In re Sci. Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litig.*, 870 F. Supp. 2d 1380, 1381

---

[3] The presence of AA as a Defendant in one action but not the others does not change the fact that all of the pending cases involve common questions of fact, as all of the cases arise out of the same data security incident.

(J.P.M.L. 2012) (finding transfer appropriate where the "actions all arise out of the September 2011 theft of computer tapes containing personally identifiable and protected health information"); *In re RBS Worldpay, Inc., Customer Data Sec. Breach Litig.*, 626 F. Supp. 2d 1322, 1322 (J.P.M.L. 2009) (granting motion to consolidate two actions pending in two judicial districts where "[b]oth actions involve allegations stemming from an unauthorized intrusion into RBSW's computer system"). The benefits of consolidation are clear when discovery in each of the cases will center on the same facts – the cause and circumstances of the Incident and the Movants data security practices.

   B.   <u>Consolidation of the Cases Promotes Their Just and Efficient Resolution</u>.

   Consolidation of these cases "will promote [their] just and efficient conduct." 28 U.S.C. § 1407. There are currently five pending actions in four different judicial districts.[4] The Panel has consistently transferred similar numbers of actions arising out of a single data incident. *See, e.g.*, *In re Cmty. Health Sys., Inc. Customer Data Security Breach Litig.*, 84 F. Supp. 3d 1362, 1362 (J.P.M.L. 2016) (granting petition for consolidation with five actions pending in a total of five judicial districts); *In re Sonic Corp. Customer Data Security Breach Litig.*, 276 F. Supp. 3d 1382, 1382 (J.P.M.L. 2017) (five actions pending in a total of three judicial districts); *Sprouts Farmers Mkt.*, 232 F. Supp. 3d at 1348 (four actions pending in a total of three judicial districts); *In re VA Data Theft Litig.*, 461 F. Supp. 2d 1367, 1368 (J.P.M.L. 2006) (three actions pending in a total of three judicial districts); *In re Lending Tree, LLC Consumer Data Sec. Breach*, 581 F. Supp. 2d 1367, 1367 (J.P.M.L. 2008) (three actions pending in a total of three judicial districts); *RBS WorldPay*, 626 F. Supp. 2d at 1322 (two actions pending in a total of two judicial districts); *In re*

---

[4] The fifth action purports to assert claims on behalf of a class of Missouri residents that is entirely subsumed by the nationwide classes in the four other actions.

*Supervalu, Inc. Customer Data Sec. Breach*, 67 F. Supp. 3d 1377, 1377 (J.P.M.L. 2014) (two cases pending in a total of two judicial districts).

Moreover, as referenced above, all of the actions assert similar theories of liability. They each assert claims for negligence and breach of implied contract. They all also assert claims for alleged violation of state consumer protection statutes. All of the pending cases are class actions, and four of the five purport to bring claims on behalf of overlapping nationwide classes. The Panel has long recognized that overlapping and parallel class actions asserting similar claims for recovery are particularly well-suited for consolidation under Section 1407. *See, e.g.*, *In re Vonage Mktg. & Sales Practices Litig.*, 505 F. Supp. 2d 1375, 1376 (J.P.M.L. 2007) ("Centralization under Section 1407 will eliminate duplicative discovery; prevent inconsistent pretrial rulings (particularly with respect to the issue of class certification); and conserve the resources of the parties, their counsel and the judiciary."); *In re Chrysler Corp. Vehicle Prods. Liab. Litig.*, MDL No. 1239, 1998 LEXIS 15675, at *2 (J.P.M.L. Oct. 2, 1998) (ordering transfer where "the actions in this litigation involve common questions of fact concerning allegations by overlapping classes of defects in the paint of certain Chrysler vehicles that result in chipping, peeling, and discoloration of the paint finish"); *In re Sugar Indus. Antitrust Litig.*, 395 F. Supp. 1271, 1273 (J.P.M.L. 1975) ("[T]ransfer of actions under § 1407 is appropriate, if not necessary, where the possibility of inconsistent class determinations exists."); *In re Hawaiian Hotel Room Rate Antitrust Litig.*, 438 F. Supp. 935, 936 (J.P.M.L. 1977) ("Section 1407 centralization is especially important to ensure consistent treatment of the class action issues.").

Consolidation is particularly appropriate here because each of the cases is in its infancy. The first case was filed on December 22, 2020, and none of the Movants has responded to any of the operative complaints. Accordingly, none of the cases to be transferred has progressed in any

meaningful way, and the work of the transferee court will not duplicate the effort of any transferor court or create any inconsistent rulings on matters of substance.[5]

      C.  <u>Consolidation Creates Convenience for the Parties and Witnesses</u>.

Consolidation is also warranted because it will create convenience for the parties and witnesses and will conserve judicial resources.  Consolidation is appropriate where it "will eliminate duplicative discovery" and "conserve the resources of the parties, their counsel, and the judiciary." *In re Commodity Exchange, Inc., Gold Futures & Options Trading Litig.*, 38 F. Supp. 3d 1394, 1395 (J.P.M.L. 2014); *see also* Manual for Complex Litigation, Fourth § 20.131 (2004) (Requests for Transfer) ("The objective of transfer [through the MDL process] is to eliminate duplication in discovery, avoid conflicting rulings and schedules, reduce litigation cost, and save the time and effort of the parties, the attorneys, the witnesses, and the courts.").  If the litigation is not consolidated, Movants will be subject to duplicative discovery demands and be forced to litigate the same issues before several courts, driving up litigation costs, putting them at risk of inconsistent rulings, and wasting judicial resources in the process.

**II.**    **The Southern District of Florida Is the Most Appropriate Venue for the Transfer of These Actions.**

In deciding the appropriate transferee court, the Panel has often considered: (i) where the majority of cases are pending; (ii) where a defendant's headquarters are located; (iii) where relevant documents and witnesses are located; (iv) whether the transferee district is easily accessible to parties and witnesses; and (v) whether the transferee court has the capacity to devote

---

[5] It is also possible that additional cases will be filed, which further supports consolidation and transfer.  *See, e.g.*, *In re Schnuck Markets, Inc., Customer Data Sec. Breach Litig.*, 978 F. Supp. 2d 1379, 1381 (J.P.M.L. 2013) (granting § 1407 motion where the estimated number of affected customers across five states indicated that additional tag-along actions could also be filed).

6

sufficient resources to complex consolidated proceedings.  As discussed below, these factors all favor consolidating pretrial proceedings in the Southern District of Florida.

      A.  <u>No Court Has More Pending Cases than the Southern District of Florida</u>.

The Panel has repeatedly found that the most appropriate transferee court is a district in which a large number of actions are pending.  *See, e.g.*, *In re WellPoint, Inc., Out-of-Network UCR Rates Litig.*, 652 F. Supp. 2d 1375, 1376 (J.P.M.L. 2009) (transferring to district where three actions already pending); *In re Conseco Life Ins. Co. Cost of Ins. Litig.*, 323 F. Supp. 2d 1381, 1383 (J.P.M.L. 2004) (finding it significant that "a plurality of the actions is pending in the Central District of California"); *In re Dow Chemical Co. Sarabond Prods. Liab. Litig.*, 650 F. Supp. 187, 189 (J.P.M.L. 1986) (transferring to district where six of fourteen actions were already pending).  Here, two of the five pending actions are pending in the Southern District of Florida.  No other district has more than one pending action.  Accordingly, Section 1407's convenience requirement favors transferring the proceedings to the Southern District of Florida.  *See In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 228 F. Supp. 2d 1379, 1381 (J.P.M.L. 2002).

      B.  <u>Most Relevant Documents and Witnesses Will Likely Be Located in the Southern District of Florida</u>.

The presence of a defendant's corporate headquarters or other principal place of business in a forum militates strongly in favor of transfer to that forum because it "implies that relevant witnesses and documents are likely to be found there."  *In re UICI "Ass'n-Group" Ins. Litig.*, 305 F. Supp. 2d 1360, 1362 (J.P.M.L. 2004); *see also In re The Home Depot, Inc., Customer Data Security Breach Litig.*, 65 F. Supp. 3d 1398, 1400 (J.P.M.L. 2014) ("Home Depot is headquartered in the Northern District of Georgia.  Thus, relevant documents and witnesses are likely located within the district."); *In re Aftermarket Automotive Lighting Prods. Antitrust Litig.*, 598 F. Supp. 1366, 1368 (J.P.M.L. 2009) (transferring to the district where "several defendants are

headquartered . . . and accordingly pertinent documents and witnesses are likely located"); *In re DirecTV, Inc. Early Cancellation Fee Mktg. & Sales Pracs. Litig.*, 655 F. Supp. 2d 1369, 1370-71 (J.P.M.L. 2009) (transferring to Central District of California because "DirecTV, Inc., is headquartered in that district and, therefore, relevant documents and witnesses are likely located there").

All of the Movants are headquartered in Sunrise, Florida, which is located in the Southern District of Florida. Those entities are likely to be in possession of relevant documents. In addition to documents, individuals with relevant information regarding Movants' practices with regard to the collection and handling of patient information are likely located in the Southern District of Florida. By contrast, the named plaintiffs in the five pending actions are scattered across the country – two are citizens of Oklahoma, two are citizens of South Carolina, and one named plaintiff resides in North Carolina, Missouri, Maryland, California, Washington, Texas, and Virginia. Thus, this factor weighs heavily in favor of transfer to the Southern District of Florida. *See, e.g.*, *In re Chocolate Confectionary Antitrust Litig.*, 542 F. Supp. 2d 1376, 1377 (J.P.M.L. 2008) ("Because defendant Hershey's worldwide headquarters are located there . . . relevant documents and witnesses are likely located in that area."); *In re Delta Air Lines, Inc.*, 170 F. Supp. 2d 1359, 1360 (J.P.M.L. 2001) (granting motion to transfer to Northern District of Georgia because "pertinent documents and witnesses are likely located there at Delta's principal place of business").

C.    The Southern District of Florida Is Easily Accessible to Parties and Witnesses and an Appropriate Venue for this MDL.

As discussed above, the Southern District of Florida is home to Movants and is easily accessible for plaintiffs and out-of-state witnesses. The Southern District of Florida contains two major international airports (Fort Lauderdale—Hollywood International Airport and Miami International Airport), and the Panel has previously recognized that the Southern District of Florida

is "a readily accessible and convenient transferee forum." *In re Monat Hair Care Prods. Mktg.,*
*Sales Practices & Prods. Liab. Litig.*, 325 F. Supp. 3d 1364 (J.P.M.L. 2018).

In addition to being a convenient forum, the Southern District of Florida has the capacity
to accommodate these proceedings. *See In re Columbia Univ. Patent Litig.*, 313 F. Supp. 2d 1383,
1385 (J.P.M.L. 2004) (deciding to "assign the litigation to a district i) in which half of the actions
are pending; and ii) that is presently equipped with the resources likely required by the complex
docket"). The Southern District of Florida only has one vacant judgeship and, on average,
expeditiously moves cases to resolution. With a median time from filing to disposition of only 3.4
months in civil cases, and a median time from filing to trial of just 15.8 months, transferring these
cases to the Southern District of Florida will ensure that the consolidated pretrial proceedings are
resolved in a timely and expeditious manner. *See*
https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0930.2020.pdf.[6]

## CONCLUSION

For all of the foregoing reasons, Movants respectfully request that the Panel order these
related actions, and any others that may be subsequently filed, consolidated and transferred under
Section 1407 to the Southern District of Florida.

Respectfully submitted this 26th day of February, 2021.

*/s/ Kristine McAlister Brown*
Kristine McAlister Brown
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, Georgia 30309
Telephone: (404) 881-7000
Facsimile: (404) 881-7777
kristy.brown@alston.com

---

[6] Moreover, the Southern District of Florida has multiple judges with previous MDL experience who would be well-suited to presiding over this action, including Judge Altonaga and Judge Altman.

*Counsel for Movants Mednax Services, Inc.; Mednax, Inc.; Pediatrix Medical Group, Inc.; and Pediatrix Meidcal Group of Kansas, P.C.*